IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


RENE GARCIA                                                                    PLAINTIFF

          v.                        Civil No.  5:15-cv-05080

CHIEF OF POLICE KATHY O'KELLEY,
Springdale Police Department;
CAPTAIN MIKE PETERS;
and JOHN AND JANE DOES                                              DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff, Rene Garcia, under the provisions of 42

U.S.C. § 1983.  He proceeds *in forma pauperis* and *pro se*.

Plaintiff is currently incarcerated in the Arkansas Department of Correction (ADC),

Grimes Unit, in Newport, Arkansas.  The claims at issue in this case arose out of the seizure of

Plaintiff's property following his arrest by the Springdale Police Department (SPD) on October

8, 2012.

Defendants filed a summary judgment motion (Docs. 24-26) on March 14, 2016.  To

allow the Plaintiff to testify in response to the motion, a hearing was held on March 31, 2016.

Plaintiff appeared by video from the Grimes Unit of the ADC.

On September 2, 2016, Defendants filed a supplemental motion for summary judgment

(Docs. 34-36).  Plaintiff filed a response (Docs. 37-39) to the motion.  Defendants filed a reply

brief (Doc. 40).  The motions are now ready for decision.

-1-

## I. Background

On October 8, 2012, the Plaintiff was asked to accompany two detectives from the SPD for questioning. *Plaintiff's Response* (hereinafter *Plff's Resp.*), Doc. 37 at 3. He was interrogated and then arrested and taken to the Washington County Detention Center. *Id.*

A search warrant was obtained on October 10, 2012, that authorized the seizure of any materials depicting, or containing, child pornography. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1. The return of the search warrant indicates the following items were seized: a dell computer; a Samsung flat screen TV; a Sony PS3; a X-box; a Sony PS3; and a Vizio flat screen TV. *Defts' Ex.* 2. A receipt was left at the residence indicating that these items had been taken by the SPD. *Plaintiff's Exhibit* (hereinafter *Plff's Ex.*) 7.

On October 16, 2012, a search warrant was issued for a HTC T-mobile cell phone. *Defts' Supp. Ex.* 1. Neither party addresses the disposition of this phone.

In March of 2013, Plaintiff's brother hired an attorney, Bryan Powell (Powell), for the Plaintiff. Plaintiff asked the attorney about getting the property back. Plaintiff was told that when the case was over he could get the property. *Plff's Resp.*, Doc. 37 at 3. On June 4, 2013, while awaiting trial, Plaintiff wrote Powell asking him, among other things, if he had looked into getting the property back because "that will give you more money." *Defts' Ex.* 3; *see also Defts' Supp.* Ex. 3. Plaintiff also stated that he had two phones and a mac laptop that his brother could sell. *Id.*

On August 1, 2013, Plaintiff wrote Powell another letter in which Plaintiff asked Powell to talk to whoever he had to about the seized property. *Defts' Ex.* 4. Plaintiff indicated he could sell the property and get Powell some more money. *Id.*

AO72A
(Rev. 8/82)

On October 3, 2013, Plaintiff was convicted of rape and sentenced to a total term of 840 months in the Arkansas Department of Correction with 240 months suspended. *Defts' Ex.* 5.

Shortly after his conviction, Plaintiff called the SPD and spoke with Detective Kevin Williams about the televisions that had been seized. According to Williams, Plaintiff indicated the televisions sets belonged to his brother. *Defts's Ex.* 6. Plaintiff denied this and testified that the television sets belonged to him. Williams told the Plaintiff he would need to talk to the prosecutor about the television sets. *Defts' Ex.* 6.

On October 8, 2013, Powell filed a motion for return of property in the Circuit Court of Washington County, Criminal Division I, in the criminal case. *Defts' Ex.* 7. He asked that the property be released to him. *Id.*

On October 30, 2013, Plaintiff wrote a letter asking about his appeal and about getting his property back. *Defts' Ex.* 8. He stated he had written everyone he could think of. *Id.*

Plaintiff, among other things, stated he would like to get his property back so it could be sold to give Powell some money. *Defts' Ex.* 9. Plaintiff asked Powell to come and see him or to write him. *Id.*

On November 6, 2013, Plaintiff thanked Powell for filing a motion to get the seized property back. *Defts' Ex.* 10. Plaintiff stated that once they got the property back his brother could sell it and get Powell some money. *Id.* Plaintiff also indicated that his brother was going to pay Powell out of his income tax. *Id.*

On November 15, 2013, Amy Driver (Driver) sent Detective Williams (*Williams*), among others, an e-mail asking them to review the list of seized items to see if they contained evidentiary

-3-

value. *Defts' Ex.* 11.  Driver noted that Powell had filed a motion for return of the items.  *Id.*  Williams replied that none of the items had evidentiary value and the items could be returned.  *Id.*

On November 20, 2013, Plaintiff wrote K. Sylvester (Sylvester), the Washington County Court Clerk, asking about his appeal and about his motion for return of property.  *Defts' Ex.* 12.  Plaintiff asked how he could get the paperwork showing the motion had been filed.  *Id.*

On November 26, 2013, a hearing was held by Judge William Storey.  *Defts' Ex.* 13.  The parties indicated they had come to an agreement that all property would be returned to the Plaintiff except a phone and a MacBook Air (neither of which were listed on the search warrant return).  *Id.*  Powell and Driver were advised that the agreement needed to be reduced to writing.  *Id.*  Plaintiff had no further contact with Powell after this hearing.  *Defts' Ex.* 22 at 3.

On December 20, 2013, Williams received a phone call from Steve Parker (Parker), the evidence technician, saying that Powell wanted to pick up Plaintiff's property.  *Defts' Ex.* 6.  Williams told Parker that he would double check with the prosecuting attorney, Amy Driver.[1]  *Id.*  Williams sent an e-mail to Driver on December 20, 2013, at 8:27 a.m., asking whether the property could be released.  *Id.*  Before Williams received a response from Driver, Parker released the property to Powell.  *Id.; see also Plff's Ex.* 5.

The property was released to Powell at 12:19 p.m. on December 20, 2013.  *Defts' Ex.* 15; *Plff's Ex.* 8.[2]  The chain of custody indicates "release to owner."  *Id.*  Parker released everything except for the phone.  *Plff's Ex.* 1.  SPD's policy on the disposal of evidence and property 6.11(D) states "[w]hen no longer needed for evidence purposes, all evidence . . . shall be returned

---

[1] Williams did not mention his e-mail exchange with Driver on November 15, 2013.

[2] Powell continued to act as Plaintiff's counsel until March of  2015.  Powell was reprimanded by the Arkansas Supreme Court Committee on Professional Conduct on August 24, 2015, for his conduct.  *Plff's Ex.* 2.

to its lawful owner . . . [i]f the owner is not allowed to lawfully have the evidence or property, the release shall not be authorized without a signed court order." *Defts' Ex.* 24.

On February 2, 2014, Plaintiff again wrote Sylvester asking about his appeal in CR 12-1865. *Defts. Supp. Ex.* 16.  Plaintiff also asked, among other things, who he should write to regarding Powell not communicating with him, who to write to regarding a change of venue, and for a copy of the motion for return of property.

Plaintiff testified he did not know the property had been released to Powell until after he filed this lawsuit.  Furthermore, he did not believe Powell had the authority to keep his property.

On February 9, 2015, Plaintiff wrote to the police regarding the seized property.  Plaintiff received a letter dated February 26, 2015, from Captain Mike Peters (Peters) of the SPD.  *Defts' Ex.* 19.  The letter said that all seized property had been returned to its owner.  *Defts' Exs.* 18 & 19.  Peters was "unaware at the time, that Mr. Garcia's property had actually be[en] released to his attorney, Bryan Powell." *Defts' Ex.* 18 at ¶ 5.  Peters relied on the chain of custody form that indicated the items had been released to their owner.  *Id.* at ¶ 4.

On February 25, 2015, Plaintiff filed a second motion for return of property in his state court criminal case, CR 12-1865.  *Defts' Supp. Ex.* 17.  On March 13, 2015, Powell was removed as Plaintiff's counsel and Joseph Self appointed.  *Defts' Ex.* 20.  On December 11, 2015, Plaintiff wrote Sylvester and asked about his two motions for the return of his property.  *Defts' Ex.* 21.  He also asked how to find out who had the property.  *Id.*

Plaintiff testified that in an effort to get his property back he: filed motions for return of the property; wrote to the county clerk; wrote to the SPD; and, wrote Powell asking for the property.  *Defts' Ex.* 22 at 4.

-5-

Plaintiff filed this complaint against SPD Chief of Police Kathy O'Kelley and Captain Mike Peters. He seeks compensation for the lost, stolen, or converted property.

## II. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show (1) a deprivation [under color of law] of (2) a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986); *Davis v. Hall*, 992 F.2d 151 (8th Cir. 1993). Section 1983 may not be "used to duplicate state tort law on the federal level." *Medina v. City and County of Denver*, 960 F.2d 1493, 1495 (10th Cir. 1992) (citation omitted).

With respect to the release of the property to Powell, I find no claim of constitutional dimension is stated. Defendants had no reason believe that Powell did not possess authority to pick up the Plaintiff's personal property. Powell filed the motion for return of property, appeared in court with the Plaintiff at a hearing where the motion was discussed, and was still Plaintiff's attorney of record when the property was released to him. *See e.g., Foundation Telecommunications, Inc.*, 341 Ark. 231, 239 (Ark. 2000) ("Apparent authority of an agent is such authority as the principal knowingly permits the agent to assume, or that he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority that he

-6-

has; or such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.").

With respect to the loss of the property itself, I find no constitutional claim is stated. The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. What process is due when a person is deprived of property is analyzed under the balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976).

The Supreme Court has held that neither the negligent nor the intentional deprivation of personal property violates due process so long as adequate post-deprivation remedies exist. *See Parratt v. Taylor*, 451 U.S. 527 (1981) (overruled on other grounds); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (unauthorized intentional taking of property does not violate due process so long as the state provides adequate post-deprivation remedies); *Sellers by and through Sellers v. Baer*, 28 F.3d 895, 902-03 (8th Cir. 1994) (inadvertence, negligence, or even gross negligence is insufficient to state a claim under § 1983); *Reese v. Kennedy*, 86 F.2d 186, 187 (8th Cir. 1989) (state tort remedies preclude § 1983 claim for deprivation of property). "'*Parratt* and *Hudson* represent a special case of the general *Matthews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide.'" *Walters v. Wolf*, 660 F.3d 307, 312 (8th Cir. 2011) (*quoting Zinermon v. Burch*, 494 U.S. 113, 128 (1990)). "The Supreme Court held that, in cases where the predicate deprivation is, or is akin to, 'a tortious loss of a prisoner's property' resulting from 'a random and unauthorized act by a state employee' – versus 'some established state procedure'

AO72A
(Rev. 8/82)

– adequate postdeprivation remedies satisfy the requirements of due process." *Walters*, 660 F.3d at 312 (*quoting Parratt*, 451 U.S. at 541).

Here, there is no question that the property was seized pursuant to a valid search warrant. Plaintiff does not challenge the constitutionality of Defendants' return of property procedures. Instead, Plaintiff argues the Defendants' failure to train employees with respect to the policy resulted in the policy not being followed in connection with the release of Plaintiff's property. *Plff's Resp.* Doc. 38 at 6; *Plff's Ex.* 1. He points out that there was no court order authorizing the release of the property to Powell. *Id.* Powell had no ownership interest in the property. *Id.* In sum, the evidence and the Plaintiff's arguments establish that the release of the property to Powell was an unauthorized random act. *Cf. Lathon v. City of St. Louis*, 242 F.3d 841, 844 (8th Cir. 2001) ("The authorized decision not to return Mr. Lathon's property is not the sort of action for which postdeprivation process will suffice.").

Plaintiff makes no argument that he cannot file a state tort action in connection with the missing personal property. Arkansas recognizes a cause of action for conversion. *See e.g., Elliot v. Hurst*, 307 Ark. 134 (1991) (cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right). Plaintiff could also bring a cause of action for replevin under Ark. Code Ann. § 18-60-801 *et seq.* Additionally, as Plaintiff knows, Rule 15.2 of the Arkansas Rules of Criminal Procedure also provides a method for filing a motion for return of seized property.[3] As Plaintiff has adequate post deprivation remedies due process is satisfied.

---

[3] Defendants suggest the Plaintiff may also a submit a claim to the Arkansas State Claims Commission. However, it's jurisdiction does not extend to municipalities, counties, school districts, or any other political subdivisions of the state. Ark. Code Ann. § 19-10-204 (2016).

Defendants also contend they are entitled to qualified immunity.  "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224 (1991), *quoting, Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986).  The inquiry is normally one of pure law.  *J.H.H. v. O'Hara*, 878 F.2d 240 (8th Cir. 1989).

Qualified immunity is analyzed in two steps.  *Saucier v. Katz*, 533 U.S. 194 (2001).  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violation a constitutional right? . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.* at 201.  Finding no constitutional violation occurred, we need not further address qualified immunity, and Defendants are entitled to summary judgment.  *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007) (If conduct did not violate a constitutional right, "there is no necessity for further inquiries regarding qualified immunity") (internal quotation marks and citation omitted); *see e.g.*, *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### III.  Conclusion

For the reasons stated, I recommend that the Defendants' motions for summary judgment (Docs. 24 & 34) be **GRANTED** and this case **DISMISSED WITH PREJUDICE**.  I further

AO72A
(Rev. 8/82)

recommend that the Court not exercise supplemental jurisdiction over any state law claims.  28 U.S.C. § 1367(c)(3).

**The Plaintiff has fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The Plaintiff is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 4th day of November, 2016.


/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-10-

AO72A
(Rev. 8/82)