IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RENE GARCIA                                                              PLAINTIFF

v.                              Case No. 5:15-CV-05080

CHIEF OF POLICE KATHY O'KELLEY,
in her official and individual capacities;
CAPTAIN MIKE PETERS, in his individual
and official capacities; and JOHN
and JANE DOES                                                            DEFENDANTS

## OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 41) of the Honorable Mark E. Ford, United States Magistrate Judge for the Western District of Arkansas, filed in this case on November 4, 2016, regarding Defendants Chief of Police Kathy O'Kelly's and Captain Mike Peters' (together, the "Defendants") Motion for Summary Judgment (Docs. 24, 34). The R&R recommends that the Court grant the Defendants' Motion in its entirety. Plaintiff Rene Garcia filed Objections to the R&R (Doc. 42), on November 16, 2016. The Court has now conducted a *de novo* review as to all proposed findings and recommendations pertaining to the claims against the Defendants. 28 U.S.C. § 636(b)(1). The Court finds that the R&R should be, and hereby is, **ADOPTED**, with the reasoning and analysis set forth below.

### I. BACKGROUND

According to the Complaint, Garcia was arrested at his residence on October 8, 2012. (Doc. 1). Law enforcement obtained a search warrant authorizing the seizure of any materials depicting, or containing, child pornography on October 20, 2012. *See* Doc.

1

26-1. The return of the search warrant indicates the following items were seized: a Dell computer; a Samsung flat-screen TV; a Vizio flat-screen TV; two Sony PlayStation 3s; and an Xbox 360 (collectively, the "Property"). (Doc. 26-2). The Springdale Police Department ("SPD") left a receipt at the residence indicating that they took the Property. (Doc. 27, p. 9).

Garcia's efforts to get the Property back began in March of 2013 when his brother hired Bryan Powell to represent Garcia. Powell assured Garcia that the Property would be returned upon the completion of his case. *See* Doc. 37, p. 3. Garcia was convicted on two counts of rape on October 3, 2013, and was sentenced to a total term of 840 months in the Arkansas Department of Corrections with 240 months suspended. (Doc. 26-5). On October 8, 2013, Powell filed a motion for return of property in the Circuit Court of Washington County on behalf of Garcia. (Doc. 26-7). In that motion, Powell asked that the Property be released to him. *Id.* In early November 2013, Garcia sent two letters to Powell thanking him for filing the motion to get the Property back. *See* Docs. 26-9, 26-10.

On November 15, 2013, Amy Driver, the prosecuting attorney in Garcia's rape case, sent SPD Detective Kevin Williams an email asking him to review the list of seized items to see if they contained evidentiary value. *See* Doc. 26-11. Driver noted that Powell had filed a motion for the return of the items. *Id.* Williams later replied that none of the items had evidentiary value, and they could be returned. *Id.*

On November 20, 2013, Garcia sent a letter to K. Sylvestor, the Washington County Court Clerk, asking about his appeal and the motion for return of property. *See* Doc. 26-12. Garcia asked how he could get the paperwork showing the motion had been filed. *Id.* In response to these communications being sent to the court, Judge William

2

Storey held a hearing on November 26, 2013, regarding the return of the Property. *See* Doc. 26-13. Powell represented Garcia at this hearing, *id.*, but the two had no further contact after the hearing. *See* Doc. 26-22, p. 3.

On December 20, 2013, Detective Williams received a phone call from Steve Parker, the sole evidence technician for SPD at the time, saying that Powell wanted to pick up the Property. *See* Doc. 26-6, p. 2. Williams told Parker that he would double-check the items with Driver. *Id.* That same day, at 8:27 a.m., Williams sent an email to Driver asking whether the Property could be released. *See* Doc. 27, p. 3. Before Williams received a response from Driver, Parker released the Property to Powell at 12:19 p.m. that day. *Id.* at 3, 7; Doc. 26-15. The chain of custody form indicates that the Property was "release[d] to owner." (Doc. 26-15). SPD's policy on Evidence and Property Handling states that "[w]hen no longer needed for evidentiary purposes, all evidence, with the exception of firearms and contraband, shall be returned to its lawful owner, . . . [or, if] the owner is not allowed to lawfully have the evidence or property, the release shall not be authorized without a signed court order." (Doc. 26-24, pp. 10-11).

On February 2, 2014, Garcia wrote another letter to Sylvestor asking about his appeal, who he should write to about Powell not communicating with him, and if he could get a copy of the motion for return of property. *See* Doc. 26-16. Garcia testified that he did not know the Property had been released to Powell until after he filed this lawsuit. He also did not believe Powell had the authority to keep the Property.

On March 13, 2015, Powell was removed as Garcia's counsel. *See* Doc. 26-20. Garcia filed the instant suit against the SPD, Police Chief Kathy O'Kelley, Captain Mike Peters, and John and Jane Does in their individual and official capacities on April 8, 2015,

alleging that the Defendants violated his due process rights under the Fourteenth Amendment and in violation of 42 U.S.C. § 1983. *See* Doc. 1.[1]

Garcia objects to the Magistrate Judge's recommendation that the Court grant the Defendants' Motion for Summary Judgment and dismiss his case with prejudice. The Court interprets Garcia's objections as arguing that there are genuine issues of material fact regarding his claims because: (1) like the plaintiffs in *King v. Fletcher*, 319 F.3d 345 (8th Cir. 2003), Garcia has no adequate post-deprivation remedies; (2) Peters and O'Kelley failed to adequately supervise employees at the SPD on December 20, 2013, which resulted in the Property being released to Powell without his consent; (3) Peters and O'Kelley intentionally deprived Garcia of the Property by directing SPD employees to release the Property to Powell without his consent, which was contrary to SPD's policy stating that property should not be released absent a signed court order; and (4) the standard set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), usually requires some kind of hearing before the government deprives a person of his or her property. *See* Doc. 42, pp. 2-3.[2]

---

[1] Judge Ford ordered that SPD be terminated as a Defendant on September 30, 2016.

[2] Garcia's additional objection that the R&R is in "conflict with," or is "contrary to," the Court's previous Order, and that the Magistrate Judge was attempting to "override and/or overrule" the Court, are mistaken and will not serve as a basis to survive summary judgment. The Court's previous Order pertained to a screening of Garcia's complaint under 28 U.S.C. § 1915A(a), which requires a plaintiff's complaint to meet the same standard as that required to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See* Doc. 8, pp. 2-3. As the Third Circuit correctly noted, "[i]t is axiomatic that the standards for dismissing claims under Fed. R. Civ. P. 12(b)(6) and granting judgment under either Fed. R. Civ. P. 50 or Fed. R. Civ. P. 56 are vastly different." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). A "motion for summary judgment is different in critical respects from a motion to dismiss for failure to state a claim. In addition to the fact that a plaintiff presumably has had an opportunity to obtain admissions during discovery, a motion for summary judgment is

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). When deciding a motion for summary judgment, the Court must consider all the evidence and draw all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op.,* 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is, therefore, entitled to judgment as a matter of law. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996).

Once the moving party has met this burden, the nonmoving party must set forth specific facts by affidavit and other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e). Genuine issues of material fact exist where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249. To withstand a defendant's motion for summary judgment, a plaintiff must substantiate his or her allegations with "sufficient probative evidence that would permit a finding in his favor on more than mere speculation,

---

reviewed under a much more stringent standard than a motion to dismiss for failure to state a claim." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 863 n.17 (3d Cir. 1994). Accordingly, there is no conflict between finding a case sufficiently plausible to survive a motion to dismiss, but insufficient to survive summary judgment.

conjecture, or fantasy." *Gregory v. Rogers,* 974 F.2d 1006, 1010 (8th Cir. 1992). Summary judgment is properly granted to a defendant where no reasonable jury could render a verdict for the plaintiff. *Taylor v. White,* 321 F.3d 710, 715 (8th Cir. 2003).

## III. DISCUSSION

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State[,] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." A prima facie case under § 1983 requires a plaintiff to show that the defendants: (1) acted under color of law; and (2) caused constitutional violations that damaged the plaintiff. *See Reeve v. Oliver*, 41 F.3d 381, 383 (8th Cir. 1994). In this case, the Defendants have admitted that they were acting under color of law, *see* Doc. 35, p. 2, so the only question that remains is whether the Defendants caused a constitutional violation that damaged Garcia. Garcia alleges a violation of his procedural due process rights under the Due Process Clause of the Fourteenth Amendment. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332.

However, the Due Process Clause "is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original). This is because the Due Process Clause "was 'intended to secure the individual from the arbitrary exercise of the powers of government,'" not a person's "lack of due care[, which] suggests no more than

a failure to measure up to the conduct of a reasonable person." *Id.* at 332. In the Eighth Circuit, even "allegations of gross negligence [do] not rise to the level of a constitutional violation." *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 955 (8th Cir. 2001). Only intentional or reckless conduct offends a defendant's due process rights. *See id.* at 955-57. An intentional act requires "both the special intent to deprive the plaintiff of his constitutional rights as well as the general intent to perform the conduct whose 'natural consequences' is the deprivation of the plaintiff's constitutional rights," *Cline v. U.S. Dep't of Justice*, 525 F. Supp. 825, 829 (D.S.D. 1981) (citation omitted), while recklessness is "defined as intentionally doing an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow," *Gregory v. City of Rogers, Ark.*, 921 F.2d 750, 756 (8th Cir. 1990) (quotation omitted).

The issue of whether a deprivation of property was negligent, reckless, or intentional, however, is presupposed by the question of whether there was a deprivation to begin with. Here, viewing the facts in the light most favorable to Garcia, the Court finds that there was no deprivation, because Powell had apparent authority to receive the Property on Garcia's behalf. Arkansas has stated that the definition of apparent authority is:

> [S]uch authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess . . . .

*Columbia Mut. Cas. Ins. Co. v. Ingraham*, 320 Ark. 408, 411 (1995) (citation omitted). "While agency is normally a question of fact to be determined by the trier of fact, it becomes a question of law when the facts are undisputed, and only one inference can reasonably be drawn from them." *Dodds v. Hanover Ins. Co.*, 317 Ark. 563, 567 (1994).

7

In the specific context of the disposition of property, district courts have found that the government acts appropriately when it disposes of property in a manner consistent with actions or representations made by the defendant's attorney, having apparent authority to act on behalf of the defendant. *See United States v. Filter*, 2015 WL 4773360, at *6 (W.D. Pa. Aug. 12, 2015); *United States v. Johnson*, 2013 WL 1749975, at *5 (D.N.J. Apr. 22, 2013); *United States v. Cineus*, 2006 WL 3618448, at *2 (S.D. Fla. Nov. 9, 2006). In *Cineus*, the court held that the government properly returned the defendant's property to the defendant's attorney when the attorney "possessed apparent authority to act as [the defendant's] agent at the time that the government gave him [the defendant's] property." 2006 WL 3618448, at *2. Likewise, in *Filter*, the court held that the government properly disposed of the defendant's property when it gave the property to the individual designated by the defendant's attorney in an email to be the contact person regarding the property, and the defendant never indicated that the individual could no longer be contacted regarding the property. 2015 WL 4773360, at *6. The court reasoned that "[t]he government reasonably relied on th[e] email" and the representations contained therein. *Id.* Similarly, in *Johnson*, the court held that the government properly disposed of the defendant's property when it donated the property based upon the representation of the defendant's former attorney. 2013 WL 1749975, at *5. The court reasoned that, although it was unclear when the attorney-client relationship terminated, "it was reasonable for the government to speak to [the attorney] absent any indication from [the defendant] that he no longer represented [the defendant,] . . . [and] it was reasonable for the government to rely on [the attorney's] implied or apparent authority to speak on behalf of" the defendant. *Id.*

8

In the instant case, Powell, as Garcia's attorney and at Garcia's request, filed a motion for the return of the Property on October 8, 2013, in the Circuit Court of Washington County. (Doc. 26-7; Doc. 36, p. 2). That motion stated "[t]hat Defendant [Garcia] requests that such items of evidence be returned to his attorney, Hon. Bryan L. Powell . . . ." (Doc. 26-7, p. 1). Approximately one month later, Garcia sent letters to Powell thanking him for filing the motion. See Docs. 26-9, 26-10; Doc. 36, p. 3. About a week later, Driver sent an email to Williams referencing the motion filed by Powell and requesting SPD to review the list of seized items to see if any items could be returned because they did not contain any evidentiary value. See Doc. 26-11; Doc. 36, p. 3. Garcia then acknowledged that the motion had been filed by sending a letter to Sylvestor asking how he could get the paperwork that showed that the motion had been filed. See Doc. 26-12; Doc. 36, p. 3. In response to this letter, Judge William Storey held a hearing on November 26, 2013, at which Garcia appeared with Powell as his attorney, to discuss the motion and the return of the Property. See Doc. 26-13; Doc. 36, pp. 3-4. Although Garcia had no further contact with Powell after this hearing, see Doc. 26-22, p. 3, Powell was Garcia's attorney of record when the Property was released to Powell on December 20, 2013. See Doc. 27, pp. 3, 7; Doc. 26-20; Doc. 36, pp. 4, 6.

Based on these undisputed facts, Powell had apparent authority[3] to receive the Property on December 20, 2013. Unlike the attorney-client relationship in *Johnson* where

---

[3] Garcia repeatedly contends that he did not give actual, explicit authority to any person or on any document to release the Property to Powell. See Doc. 37, p. 4; Doc. 38, pp. 6-7; Doc. 42, p. 3. However, under agency law, a person is not required to have actual authority in order to receive a principal's property. As the Fifth Circuit noted, "an apparent agent, acting with only apparent authority, can receive property on behalf of the principal." *BJ Servs. S.R.L. v. Great Am. Ins. Co.*, 539 F. App'x 545, 551 (5th Cir. 2013).

9

the termination date of the representation was disputed, the record makes clear that the attorney-client relationship between Powell and Garcia was not terminated until March 13, 2015—approximately a year and three months after the date Powell received the Property. See Doc. 26-20. This makes it even more "reasonable for the government to speak to [Powell] absent any indication from [Garcia] that he no longer represented [Garcia,] . . . [and] for the government to rely on [Powell's] implied or apparent authority to speak on behalf of" Garcia. *Johnson*, 2013 WL 1749975, at *5. In addition, the record does not contain, and Garcia does not allege, any facts showing that he ever indicated that Powell could no longer be contacted regarding the Property. Further, like the email in *Filter* that represented who the contact person was for the defendant's property, the government could have "reasonably relied" on the motion filed by Powell, 2015 WL 4773360, at *6, which stated "[t]hat Defendant [Garcia] requests that [the Property] be returned to his attorney, Hon. Bryan L. Powell . . .," (Doc. 26-7, p. 1). This motion was referenced in various letters and emails that were circulated throughout the circuit court and SPD. Therefore, the Court finds that Garcia was not "deprived" of the Property because Powell "possessed apparent authority to act as [Garcia's] agent at the time that the government gave him [Garcia's] property." *Cineus*, 2006 WL 3618448, at *2.

Alternatively, even if there was a "deprivation," the Court finds that the actions taken by the SPD employees were, at most, negligent given that Powell had apparent authority to receive the Property. This is because Garcia has failed to set forth any facts showing that anyone intentionally or recklessly deprived him of the Property.[4] In fact,

---

[4] In his fifth objection, Garcia contends that O'Kelley and Peters intentionally deprived him of the Property by "direct[ing] employees John [and] Jane Doe to release approximately $5,000.00 of [Garcia's] property to attorney Brian L. Powell without his

10

Garcia does not even allege, let alone set forth facts showing, that Parker or any other SPD employee was even vaguely aware or should have been aware that giving the Property to Powell, who had apparent authority to receive the Property, would result in Garcia not receiving control of the Property. Garcia relies heavily on SPD's policy on Evidence and Property Handling for his due process claim. However, the existence of a policy and an action by an SPD employee in contradiction to the policy is not evidence of a due process violation in and of itself. See Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1993) (stating that procedural due process applies only to property and liberty interests encompassed by the 14th Amendment, and while those interests may be created by laws and policies, violations of those laws or policies, without more, are not violations of federal due process rights). Without setting forth any facts showing subjective culpability of an intent to deprive Garcia of the Property or that there was a known or obvious risk that giving the Property to Powell would deprive Garcia of the Property and that someone deliberately disregarded that risk, the actions by SPD's employees were, at most, negligent acts causing the unintended loss of the Property.

---

consent . . . ." See Doc. 42, p. 3. However, Garcia has not presented, and the Court has not found, any facts in the record that would show that O'Kelley or Peters directed any employee, including Parker, to release the Property. Absent any facts supporting it, such an allegation will not serve as a basis to survive summary judgment. In addition, Garcia makes several references to the fact that O'Kelley or Peters should have gotten his consent before they released the Property to Powell. "In other words, [Garcia] contends that in completing . . . [their] duties [O'Kelley and Peters] failed to protect [Garcia's] property interest." Williams v. Soligo, 104 F.3d 1060, 1061-62 (8th Cir. 1997). However, at most, "[t]hat is a negligent deprivation claim barred by Daniels [v. Williams, 474 U.S. at 328]." Id. at 1062.

11

In sum, because Garcia was not intentionally or recklessly deprived of the Property, his procedural due process rights were not violated.[5] In order "[f]or there to be section 1983 liability, there must first be a violation of the plaintiff's constitutional rights." *Avalos v. City of Glenwood*, 382 F.3d 792, 802 (8th Cir. 2004) (quotations omitted). Therefore, there are no genuine issues of material fact remaining against O'Kelley or Peters in their individual or official capacities, so summary judgment is appropriate as to all of Garcia's claims.[6]

## IV. CONCLUSION

The Court, being well and sufficiently advised after its *de novo* review of the record, finds that the R&R (Doc. 41) should be and hereby is **ADOPTED**. Accordingly, the Defendants' Motion for Summary Judgment (Docs. 24, 34) is **GRANTED**, and Plaintiff Rene Garcia's Complaint is **DISMISSED WITH PREJUDICE**. A judgment dismissing the case will be filed contemporaneously with this Order.

**IT IS SO ORDERED** on this 15th day of March, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[5] Although Garcia alleges in his fourth objection that O'Kelley and Peters failed to adequately supervise the employees at SPD, which led to the Property being released to Powell, "neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim." *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 861-62 (8th Cir. 2015).

[6] The Court notes that it expresses no opinion on whether Garcia may be able to bring any state-law claims, e.g., for conversion, in state court against Powell or any other person or entity. To the extent Garcia's Complaint can be interpreted as asserting any state-law claims, the Court declines to exercise its supplemental jurisdiction over them.